```
 1
 2
 3
 4
 5
 6
 7
 8
 9                          UNITED STATES DISTRICT COURT
10                         CENTRAL DISTRICT OF CALIFORNIA
11                                 EASTERN DIVISION
```

| | |
|---|---|
| **SOTERO GUTIERREZ-PONCE,** | ) |
|         **Plaintiff,** | )    **Case No. EDCV 16-1664 AJW** |
| v. | )    **MEMORANDUM OF DECISION** |
| **NANCY A. BERRYHILL,** <br> **Acting Commissioner of the** <br> **Social Security Administration,** | ) |
|         **Defendant.** | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleged disability beginning August 1, 2012. [JS 2]. In a January 16, 2014 written hearing decision that constitutes the Commissioner's final decision, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. [JS 2; Administrative Record ("AR") 15-22]. The ALJ determined that plaintiff suffered from the following severe impairments: status post ("S/P") laminectomy of the lumbar spine; mild degenerative disc disease of the lumbar spine with radiculopathy; and rheumatoid

arthritis in the knees bilaterally. [AR 18]. The ALJ also found that plaintiff had non-severe impairments consisting of diabetes, atypical chest pain, and hypertension. [AR 18]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work, and that plaintiff was not disabled because his RFC did not preclude performance of his past relevant work as actually performed. [AR 21].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion**

Plaintiff contends that the ALJ erred in rejecting the opinion of plaintiff's treating physician and family medicine practitioner, Elmer Symonett, M.D., and in relying instead on non-treating source opinions.

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see generally 20 C.F.R. §§ 404.1502, 404.1527(c), 416.902, 416.927(c).

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Edlund, 253 F.3d at 1157; see Orn, 495 F.3d at 631; SSR 96-2p, 1996 WL 374188, at *1-*2.

Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff underwent double arterial bypass surgery around 2006 and a lumbar spine laminectomy several years earlier. [AR 18, 32, 40, 289]. Between June 2011 and November 2011, plaintiff saw Dr. Symonett for complaints of hypertension, diabetes, back pain, and left foot pain, redness, and swelling. Dr. Symonett diagnosed diabetes and hypertension. He prescribed or refilled a variety of medications (tramadol, an opioid pain reliever; enalapril, an anti-hypertensive; Restoril (temazepam), used to treat insomnia; metformin, used to treat type 2 diabetes; and aspirin. [AR 287, 289]. In September 2011, Dr. Symonett opined that plaintiff should remain off work for 90 days due to left ankle swelling. [AR 288]. In November 2011, plaintiff complained of back pain and bilateral foot pain that was not relieved by pain medication. Dr. Symonett prescribed Vicodin (hydrocodone and oxycodone), an opioid pain reliever. [AR 287].

During a March 2012 follow-up visit, plaintiff requested refills of his medications and complained of chest pain, which led to a diagnosis of gastroesophageal reflex. Plaintiff's Vicodin prescription was refilled. [AR 286]. In April 2012, plaintiff complained of leg pain radiating into his left lower extremity. His diagnoses were diabetes, hypertension, and S/P laminectomy with radiculopathy. Dr. Symonett

prescribed the opioid pain reliever Percocet (hydrocodone and oxycodone) and refilled plaintiff's temazepam. [AR 285].

In September 2012, plaintiff complained of fatigue in both legs. His diagnoses were uncontrolled diabetes, hypertension, S/P laminectomy with radiculopathy, and diabetic neuropathy. Dr. Symonett discontinued Percocet, prescribed the opioid pain reliever Norco (acetaminophen and hydrocodone), and refilled plaintiff's other medications. [AR 317].

Plaintiff's September 2012 blood test results were positive for rheumatoid arthritis ("RA") and also revealed elevated blood glucose and hemoglobin A1c, consistent with plaintiff's diagnosis of uncontrolled diabetes. [AR 332]. In October 2012, diagnoses of rheumatoid arthritis and hyperlipidimia were added to plaintiff's chart, and a prescription for a statin drug (pravastatin) was added. [AR 315]. Dr. Symonett completed a "Physical Capacities" form in October 2012 for purposes of determining whether plaintiff's "current physical condition would interfere with his/her ability to work or participate in a CalWORKs activity." [AR 296]. Dr. Symonett indicated that plaintiff could perform less than sedentary work due to his history of lumbar spine laminectomy. [AR 296-297].

In July 2013, plaintiff's blood work was again positive for RA, elevated blood glucose and elevated hemoglobin A1c. [AR 324-325]. During a follow-up visit for lab results in September 2013, plaintiff complained of low back pain, burning in his left foot, and depression. He exhibited reduced range of motion in the low back. He requested sleep medication. [AR 314]. Lumbar discopathy and depression were added to his diagnoses, and the anti-depressant Paxil was added to his prescriptions. Plaintiff's diabetes continued to be uncontrolled. [AR 314].

In February 2014, plaintiff presented for medication refills and complained of a two-month history of bilateral knee pain. He exhibited tenderness in both knees with swelling and reduced range of motion. Plaintiff's diagnoses were RA, controlled hypertension, and diabetes. [AR 313]. Dr. Symonett prescribed Vicodin, prednisone, and glyburide, a diabetes medication. [AR 313]. In April 2014, plaintiff complained of severe pain bilaterally in the knees, fingers, and elbows. Examination revealed reduced range of motion, swelling, and crepitus in the knees; decreased strength and motion in the fingers; and tenderness to flexion in the elbows. [AR 312]. Plaintiff's blood pressure was elevated. His diagnoses were uncontrolled hypertension, uncontrolled diabetes, and RA. Plaintiff was continued on medications, including Norco and

prednisone, a corticosteroid. [AR 312].

On April 30, 2014, Dr. Symonett completed a "Lumbar Spine Impairment Questionnaire." He stated that plaintiff had diagnoses of degenerative joint disease of the low back, S/P laminectomy at L4-L5, S/P coronary artery bypass surgery, type 2 diabetes, hypertension, and rheumatoid arthritis. Plaintiff's prognosis was "poor." [AR 305]. Dr. Symonett noted positive clinical findings consisting of limited range of lumbar spine motion with numbness and pain in the left lower extremity and in all joints; swelling of the joints of the fingers and knees; abnormal gait involving the left leg; sensory loss in the posterior left thigh to big toe; reflex changes in the left knee; and muscle atrophy and weakness in left lower extremity. [AR 305-306]. Dr. Symonett also said that MRI findings and laboratory results positive for RA supported his diagnoses. [AR 306]. Dr. Symonett described plaintiff's symptoms as constant pain, loss of strength, compression in the low back, burning and numbness in his thigh and leg, and sharp pain on top of his foot and big toe. He opined that plaintiff's symptoms and limitations were "reasonably consistent" with the physical impairments described in the questionnaire. [AR 306]. Dr. Symonett noted that he had not been able to relieve the pain with medication without unacceptable side effects. He opined that during an eight-hour workday, plaintiff could sit for one hour, stand and walk for one hour, with the need to move around for 45 minutes every hour, and lift and carry no more than 10 pounds occasionally. Additionally, plaintiff's symptoms are constantly severe enough to interfere with his attention and concentration. He would incapable of tolerating even a "low stress" work environment. He would need to take unscheduled breaks at unpredictable intervals and would likely miss more than three workdays per month due to his impairments. [AR 309-310].

In October 2014, plaintiff returned to Dr. Symonett complaining of pain in his fingers and right foot. On examination, plaintiff exhibited loss of sensation in an L3 distribution in the right lower extremity. [AR 334]. Dr. Symonett diagnosed low back pain and diabetes, and he prescribed gabapentin (used to treat nerve pain), tramadol (Ultram), and Norco. [AR 334].

Robyne Alleyne, M.D. conducted a consultative internal medicine examination at the Commissioner's request in February 2013. [AR 298-302]. Dr. Alleyne interviewed plaintiff and performed a physical and neurologic examination. He did not have any medical records to review. Positive examination findings included elevated blood pressure of 230/150; reduced grip strength bilaterally; limited lumbar flexion; positive straight leg raising on the left; marked lumbar spasm; slight scoliosis; and inability

to tiptoe or heel walk. [AR 298-301]. Dr. Alleyne diagnosed: (1) history of chronic, severe back pain with signs and symptoms of lumbar radiculopathy affecting his left leg; (2) history of coronary artery disease with severe hypertension; and (3) history of rheumatoid arthritis, without evidence of joint deformity. [AR 301]. Dr. Alleyne opined that plaintiff could perform light work. [AR 299-301]. The non-examining state agency physicians essentially agreed, with some differences noted in plaintiff's ability to push and pull and in his environmental and postural limitations. [AR 64-67, 73-76, 301-302].

The ALJ concluded that Dr. Symonett's October 2012 and April 2014 opinions had "no probative value," explaining that "[t]hese checklist-style forms appear to have been completed as an accommodation to the claimant and include only conclusions regarding functional limitations without any rationale . . . ." [AR 20]. The ALJ reasoned that Dr. Symonett's conclusions were not supported by "any objective evidence," and that the course of treatment pursed by Dr. Symonett was inconsistent with his opinions. [AR 20].

"[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004). Even when a physician's opinions "are expressed in check-box form," however, they are "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit" when they are "based on significant experience with [a claimant] and supported by numerous records . . . ." Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (footnote omitted); see Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that the ALJ did not give specific and legitimate reasons supported by substantial evidence for rejecting a check the box medical assessment by the claimant's treating physician; although the assessment contained "almost no detail or explanation," the record supported the treating physician's "opinions because they are consistent both with [the claimant's] testimony at the hearing and with [the treating physician's] own extensive treatment notes which, as discussed above, the ALJ largely overlooked").

Here, as in Garrision, the ALJ failed to recognize that even those parts of Dr. Symonett's opinion that were expressed as a "check-box opinion" were gleaned from his treating relationship with plaintiff for impairments that the ALJ found independently severe, and that at least some aspects of Dr. Symonett's treating source opinion were supported by his treatment notes or, as to the April 2014 opinion, by

summarizing clinical and objective findings supporting his "check-box" responses, including range of motion limitation, joint swelling, abnormal gait, sensory loss, reflex changes in the left knee, and muscle weakness. Dr. Symonett's treatment records also include laboratory test results supporting his diagnoses of diabetes and RA. [AR 305-306]. See Sproul v. Astrue, 2012 WL 553306, at *8 (S.D. Cal. Feb. 17, 2012) (stating that "[t]here is a difference . . . between a conclusory 'checklist' and a 'fill-in-the-blank' form that also calls for comments from the physician in support of his or her answers, and that the ALJ erred in rejecting assessments on a questionnaire that were supported by substantive comments"); see also SSR 96-2p, 1996 WL 374188, at *3-*4 ("For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence . . . ."). In contrast, Dr. Alleyne never treated plaintiff and reviewed no records in conjunction with his examination in February 2013. Additionally, the ALJ's dismissal of Dr. Symonnett's opinion as "an accommodation to" to plaintiff is not based on substantial evidence of any actual improprieties. See Lester, 81 F.3d at 832 ("The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits. While the [Commissioner] may introduce evidence of actual improprieties, no such evidence exists here.") (internal quotation marks and citation omitted); Burrow v. Barnhart, 224 Fed.Appx. 613, 615 (9th Cir. Mar. 7, 2007) (holding that the ALJ's conclusion that the claimant's treating physician was acting as her advocate was "unsupported by substantial evidence" where the record revealed "only that [the treating doctor] reached the unbiased medical opinion that [the claimant's] impairments prevented her from working and that he communicated these opinions to others inquiring about her condition").

The ALJ also described the "course of treatment pursued by [Dr. Symonett] as not "consistent with what one would expect if the claimant were truly disabled, as [Dr. Symonett] has reported." [AR 20]. Plaintiff already had undergone bypass surgery and back surgery. Nonetheless, Dr. Symonett maintained him on a rotating regimen of narcotic, opioid pain relievers (Vicodin, Norco, or Percocet). Dr. Symonett also prescribed steroid medication, the pain reliever tramadol, and medication for diabetes, high blood pressure, and neuropathy. Cf. Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (questioning whether "a regimen of powerful pain medications and injections" was "conservative" treatment, and noting that even if it was, the claimant's treatment had not been so limited where she had undergone cervical fusion

7

surgery several years earlier "in an attempt to relieve her pain symptoms," and although she had not undergone further surgery, "the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

The ALJ's reasons for rejecting Dr. Symonett's treating source opinion in favor of the non-treating source opinions are insufficient.

**Subjective symptom testimony**

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for finding plaintiff's subjective complaints not fully credible.

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (regulations regarding the evaluation of pain and other symptoms); SSR 16-3p, 2016 WL 1119029 (providing guidance about how symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. The ALJ "may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ's reasons for rejecting subjective testimony "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff, who was represented by counsel during the hearing, testified that since 2010 he had experienced sharp, burning pain in his lower back, and had suffered from chronic numbness in his left leg,

[AR 32, 40]. He estimated that he could sit 10 to 20 minutes before getting sometimes sharp back pain that he needed to relieve by standing for awhile. [AR 43]. Plaintiff said that he could stand and walk for about 20 minutes. [AR 43]. Plaintiff testified that he went to the grocery store once a week for about half an hour, and sometimes had difficulty lifting or walking while there. During a typical day, he did a little housecleaning, such as dishwashing, for 25 to 30 minutes. He spent most of the day lying down watching television. [AR 44-45]. His medication made him drowsy for about an hour after taking it. [AR 45]. He had difficulty sleeping and took sleeping pills, which helped. [AR 46]. He had pain in his fingers. [AR 46].

There is no evidence of malingering, so the ALJ was obliged to articulate clear and convincing reasons for rejected the alleged severity of plaintiff's subjective complaints.[1] The ALJ gave three reasons for finding plaintiff's subjective complaints only "partially credible": the absence of objective medical evidence fully corroborating plaintiff's subjective symptoms; plaintiff's "mild and conservative treatment" with "medication management only"; and, relatedly, the lack of referral for specialized treatment. [AR 19-20].

Those reasons are not clear and convincing. For the reasons described above, the ALJ improperly disregarded or discounted positive clinical and objective findings summarized in Dr. Symonett's treating source records, and the ALJ also unreasonably minimized plaintiff's treatment history by labeling it as "mild and conservative." The absence of a referral to a specialist is simply another way of minimizing the course of treatment that plaintiff received. Although some of plaintiff's conditions might have benefitted from specialized treatment, there is no evidence that Dr. Symonett could not treat them effectively, so that reason alone is not a clear and convincing reason for the ALJ's finding regarding plaintiff's subjective symptoms. Accordingly, the ALJ's credibility finding is not supported by substantial evidence.

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]" Treichler v. Comm'r of Soc., Sec. Admin., 775 F.3d 1090, 1099 (9th

---

[1] Defendant contends that the ALJ "properly considered that Plaintiff appeared to exaggerate his symptoms and their true limitations." [JS 20]. Defendant has not identified any evidence outside of the ALJ's decision that suggests that plaintiff was malingering, such as an observation or test result by a treating or examining physician. Thus, defendant's contention is simply another way of arguing that the ALJ permissibly discounted plaintiff's subjective complaints.

9

Cir. 2014) (quotomg 42 U.S.C. § 405(g)). As the Ninth Circuit has explained, however,

> the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. If the district court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy, and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony. In particular, we may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.

Dominguez v. Colvin, 808 F.3d 403, 407–408 (9th Cir. 2015) (internal quotation marks, citations, and brackets omitted).

Those "rare circumstances" compelling a remand for an award of benefits are not present. The ALJ made legal errors evaluating Dr. Symonett's opinion and plaintiff's subjective symptoms. However, the record is not free from conflicts and ambiguities, and all essential factual issues have not been resolved. For example, although the ALJ unreasonably concluded that both Dr. Symonett's October 2012 and April 214 opinions were merely "checklist-style forms" lacking "any rationale for [his] conclusions," that does not mean that one or both of those opinions are entitled to controlling weight under the Commissioner's regulations. To properly evaluate those opinions, the ALJ must carefully apply the relevant factors on remand. See generally 20 C.F.R. §§ 404.1527(c), 416.902, 416.927(c). Once the ALJ has properly weighed the medical opinion evidence, he can also properly reassess plaintiff's subjective symptoms. Accordingly, on remand, the Commissioner shall direct the ALJ to conduct a supplemental hearing, fully and fairly develop the record, reevaluate the medical opinion evidence in the record and plaintiff's subjective complaints, and issue a new decision containing appropriate findings.

## Conclusion

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

Dated: August 9, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge